# Wythebille

J. H. WILLIAMS, ADMINISTRATOR, ETC. V. VIRGINIA ELECTRIC
& POWER COMPANY, ET AL.

June 12, 1939.

Record No. 2063.

Present, All the Justices.

The opinion states the case.

*Broudy & Broudy* and *W. R. Ashburn,* for the plaintiff in
error.

*T. Justin Moore, Leigh D. Williams, F. E. Kellam* and
*Richard B. Kellam,* for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

On the afternoon of Sunday, June 27, 1937, Sherwood Allison Williams, a boy nearly eighteen years of age, was electrocuted by coming in contact with a high voltage wire under control of the Virginia Electric & Power Company, at a sawmill operated by C. T. Whitehead in Princess Anne county.

The administrator of the deceased brought this action against the Virginia Electric & Power Company and Whitehead, claiming that the death of young Williams was due to the joint and concurring negligence of both defendants. At the conclusion of the plaintiff's testimony the trial court struck the evidence and a verdict and judgment for the defendants followed as a matter of course. A writ of error has been granted to the administrator.

The facts are not in dispute. Whitehead operated a steam sawmill located in a body of woods near a secondary highway in a rural section of Princess Anne county.

The Virginia Electric & Power Company operated a transmission line consisting of two uninsulated copper wires, carrying 2,300 volts of electricity, which ran parallel to and about one hundred and twenty feet from the road and in close proximity to the sawmill. About three months before the accident the Power Company had occasion, by reason of a near-by break in its line, to notice the proximity of the wires to the sawmill machinery. Thereupon its employees pulled the wires away from the machinery and raised and attached them to a tree.

The sawdust from the mill was carried from the saws and deposited on the ground by means of the usual chain conveyor, which was set at an angle and rested on a cross-arm supported by two upright posts. The electric wires ran parallel to and about six feet from this conveyor, and were three or four feet from the nearest end of the protruding cross-arm.

As the sawdust accumulated and the pile grew in height its base broadened until it was partly beneath the wires.

But the wires were not directly over the peak of the pile, and at the time of this unfortunate occurrence there was a distance of some seven feet from the wires to the nearest point in the pile. Accordingly workmen around the mill in the discharge of their duties were able to walk on and across the pile without coming in contact with the wires.

Whitehead's foreman, Simpson, lived in a camp about two hundred feet from the mill site. He invited a number of relatives and friends to take dinner and spend the day with him on Sunday, the day of the accident. Among his guests was Sherwood Allison Williams, who lived in the city of Norfolk, and was at that time seventeen years and eight months of age.

After the midday meal young Williams went to the sawmill, climbed the sawdust pile, and then got up on the cross-arm supporting the conveyor. He came in contact with one of the wires and was killed instantly.

The only eye-witness to the accident was a colored man, Sam Edwards, an employee of Whitehead, who was called as a witness for the plaintiff. Edwards testified that he was sitting on a fence facing the mill and a short distance from it; that young Williams climbed the sawdust pile, walked around the end of the conveyor, jumped up on the cross-arm and sat there probably a minute or more swinging his feet while holding on to the conveyor with one hand, and then reached out or up and caught hold of the wire, which, as has been stated, ran some three or four feet from the end of the cross-arm.

An examination of the body of the deceased disclosed a burn on the right hand extending from a point between the thumb and the index finger across the palm, indicating where the wire had been grasped.

The administrator insists that the deceased was an invitee on the premises; that the Virginia Electric & Power Company was negligent in that it allowed its highly charged and uninsulated wires to remain in close proximity to the mounting pile of sawdust after it had notice of this condition; and that it knew or should have known that such con-

dition was dangerous and unsafe to persons lawfully using the premises. He contends that Whitehead was negligent in that he permitted and allowed his premises to be in an unsafe and dangerous condition.

Both defendants insist that they were not guilty of primary negligence; that the deceased was a trespasser on the premises; that he had no right to be on the sawdust pile, or on the conveyor, or on the cross-arm; that they could not reasonably have anticipated that the deceased, being unlawfully on the sawmill, would climb up on the cross-arm of the conveyor and catch hold of the highly charged wire; and that even if their primary negligence be proved, the deceased was guilty of contributory negligence.

The view we take of the matter makes it unnecessary that we discuss whether the defendants were guilty of primary negligence. Assuming but not deciding that such primary negligence has been proven, the undisputed evidence clearly shows that the deceased was guilty of contributory negligence.

The evidence discloses that the deceased had lived all of his life in the city of Norfolk, in a house wired with electricity and equipped with electrical appliances, and that he had been warned by his father of the dangerous nature of electric wires and that they should not be handled or touched.

We thus have a case of a young man nearly eighteen years of age who was familiar with the dangerous nature of electric wires, who went to a place where he had no right to be, climbed up on the sawdust pile, jumped up on the cross-arm, and reached out a distance of at least three feet and caught hold of the highly charged wire which brought instant death to him. The evidence clearly discloses that it was not by mere accident that he came in contact with the wire, but he deliberately reached up and caught hold of it. The burns on his hand bore out the direct evidence on this point.

There is no error in the action of the trial court in striking the evidence, and the judgment is

*Affirmed.*